ERVIN, Justice
(dissenting).
By petition for writ of certiorari we have for review an order of the Florida Industrial Commission dated February 2, 1967.
The facts involved in the instant review are related in our first opinion in this cause filed on April 5, 1965 (Tingle v. Board of County Commissioners, Fla., 174 So.2d 1) and will not be repeated herein, with the exception of the following necessary background information:
(1) On March 31, 1964 the Deputy Commissioner entered an order denying the Petitioner widow’s claim for compensation benefits.
(2) On November 17, 1964 the full Commission affirmed the Deputy’s order.
(3) On appeal to this Court the question presented was whether the decedent’s heart attack was causally related to his employment. In our first decision in Tingle v. Board of County Commissioners, supra, we held that there was a causal relationship and reversed the full Commission and remanded the cause to the Deputy. Therein, we concurred in the view of the dissenting member of the Commission, which we quoted from for explanation of our position. The dissenting Commissioner said, and we quoted him with approval as follows :
“ ‘This cause should be remanded to the deputy commissioner for entry of an Order awarding benefits and apportioning the benefits pursuant to Section 440.-02(19), Florida Statutes.’ ”
(at p. 2.)
(4) Pursuant to that opinion, further hearings were held and a final order was entered June 17, 1966. In his order the Deputy found that the deceased died as a result of a coronary thrombosis. Prior to death the decedent had a pre-existing but non-disabling disease which was unknown to him and his employer: arteriosclerosis of the coronary artery. Based upon medical and other testimony, the Deputy found that the decedent would have lived ten years longer but for the industrial accident which accelerated his heart condition and resulted in the fatal thrombosis. The Deputy made such determination pursuant to F.S. Section 440.02(19), F.S.A.
(5) Upon review, the full Commission on February 2, 1967 reversed the order of the Deputy on the basis of Hampton v. *4 Owens-Illinois Glass Co. Paper Products Division (Fla.), 140 So.2d 868. The cause was remanded to the Deputy with instructions to apportion the death benefits due the widow on the basis of percentages rather than' the number of years which the injury had accelerated the death. The Commission’s order of reversal is the subject of this review.
Petitioner’s basic contentions are:
(a) apportionment, if applicable, should be determined in terms of time, not percentages, and (b) there should be no apportionment in the instant case by virtue of pronouncements in Evans v. Florida Industrial Commission, et al. (Fla.), 196 So. 2d 748.
I first examine the latter of the contentions expressed immediately above. It is noted that our opinion in Evans, supra, was filed February 1, 1967, one day prior to the Commission’s order here reviewed. In Evans, as in the instant case, we were concerned with constructions and application of Section 440.02(19), which reads in part:
“* * * Where a pre-existing disease or anomaly, is accelerated or aggravated by accident arising out of and in the course of employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable with respect to permanent disability or death. * *
This apportionment provision is a limitation on the operation of the maxim that the employer takes the employee as he finds him.
In Evans, a case which involved application of Section 440.02(19) to an award of 'disability benefits — not of death benefits— we said that in those cases in which a pre-existing disease is aggravated by industrial injury, that disability which results from the normal progress of the disease and would have existed had the accident never occurred should be apportioned out of an award. As stated in Evans,
“* * * [an] apportionment is proper only when and to the extent that the pre-existing disease either, (1) was disabling at the time of the accident and continued to be so at the time the award is made or (2) was producing no disability at the time of the accident but through its normal progress is doing so at the time permanent disability is determined and an award made.”
(at 752).
A statement summarizing the preceding discussion regarding apportionment in the opinion in Evans reads:
“The effect of this opinion is simply to hold that apportionment under Sec. 440.02(19) is proper only when and to the extent that a pre-existing disease produces disability independently of the accelerating or aggravating effect of an industrial accident.” (text 754, emphasis added)
Thus, as held in Evans, it is proper
“* * * t0 apportion out of an award only that portion of the disability attributable in fact to the normal progress of the pre-existing disease which would have occurred had the aggravating accident never occurred.” (at 754)
When the rationale of the Evans case is applied to the facts and issues of the instant case, the result is a determination that no apportionment is called for. The evidence gleaned from the transcript of record reveals that the employee, prior to his accident, had no symptoms of heart condition or cardiac hypertension, nor was he disabled in any measure by the disease from performing his employment duties. Inasmuch as there was no existing disability resulting from the normal progress of the disease, the rationale of Evans indicates that as a matter of law the resulting death was due to the acceleration or aggravation of the pre-existing disease by *5 the accident, and apportionment is not required. Thus, the Deputy Commissioner was correct as to the amount of award— 350 weeks pursuant to Section 440.16(2)— but his reasons given for reaching such result appear to be in error.
In respect to the first contention that the apportionment in a death case of the kind here considered should be determined on the basis of time and not percentages, we comment as follows:
The recent cases of Evans v. Florida Industrial Commission, et al., supra, and Stephens v. Winn-Dixie Stores, Inc., et al. (Fla.) 201 So.2d 731 (original opinion filed January 25, 1967 and opinion on rehearing filed May 31, 1967), definitively discussed the subject of successive injuries and preexisting diseases and disabilities in relation to apportionment required under our Workmen’s Compensation Act.
In Stephens (original opinion) we said:
“* * * Considering the philosophy and theory of workmen’s compensation, there seems to be no logical reason to treat pre-existing disability resulting from injury any differently than pre-existing disability resulting from disease or other congenital defect. Further support for the idea that the two apportionment provisions [§§ 440.15(5) (c) and 440.-02(19)] were intended to have parallel application is found in the language of the special disability fund provision, enacted simultaneously with 440.15(5) (c). The language ‘physical impairment’ was obviously made sufficiently broad to encompass the subject matter of both apportionment provisions, i. e., pre-existing disability from disease as well as from injury.
“Larson, in Sec. 59.20 -of his work, gives support to the view we adopt, saying:
“ ‘to be apportionable, then, an impairment must have been independently producing some degiee of disability before the accident, and must be continuing to operate as a source of disability after the accident.’ ”
Also, in Stephens (opinion on rehearing) we said:
“* * * Thus, although we observed in the instant opinion that the very principle of apportionment was in inherent conflict with the stated maxim, [that the employer takes the employee as he finds him], we did go on and adopt a construction of the apportionment provision that would lead some vitality to the maxim. Of course, the actual basis for this continued vitality under our holding is the very real distinction between residual disability, which is apportionable, and residual predisposition to re-injury, which is not. [emphasis in text] To the extent that a latent predisposition to injury, whether resulting from disease or from an earlier injury, escapes the operation of the apportionment formula, it can certainly be said that the subject maxim is being honored.” (Emphasis supplied.)
In Evans we foreshadowed a re-examination of the subject involved in Petitioner’s first question when we said:
“We point out again that the provision of the statute dealing with acceleration of death due to accident operating on a pre-existing disease is not before us. We warn that despite our having previously treated apportionment in death and disability cases under the same rule, as we did in United Electric Co., supra, [United Electric Co. v. Myers (Fla.), 134 So.2d 7] there is such a difference between death and disability that further study might require a different construction of the statute in death cases. For example, while it can be said that a preexisting disease would have produced a portion of claimant’s disability regardless of the accident, it of course cannot be said that it would have produced a portion of claimant’s death.” (Emphasis added.)
*6 It appears from the evidence that except for the accelerating effect of the industrial accident employee, who was thirty-five years old at death, had a life expectancy of at least ten years under the normal progress of his heart disease. His heart disease was to him and his employer unknown, quiescent and not disabling. Compare G. & L. Motor Corporation v. Taylor (Fla.), 182 So.2d 609.
The foregoing considered in answering the first question, it appears to me from the rationale of the two cases cited, and particularly from the last quotation above, that it is impractical to attempt to assign the portion or percentage the pre-existing heart disease contributed in producing the employee’s death, although it might be practical to medically forecast the life expectancy of an employee in terms of the normal progress of his heart disease.
It further appears to me reversion to Hampton v. Owens-Illinois Glass Co. (Fla.), 140 So.2d 868, by here authorizing apportionment in death cases, is an anomalous departure from the rationale of the Evans and Stephens cases. I think this will add to further confusion in the compensation area and is contrary to the great weight of authority. Particularly is this so when it is considered that had the employee lived, no apportionment would have been in order; however, since the strain of the injury was severe enough to cause his heart failure and death, apportionment of the benefits to his widow is deemed to be required. Since the Evans and Stephens cases were decided, at least five cases have been decided by us following the rules therein that nondisabling, prior injury conditions or diseases are not apportionable in subsequent compensation injury cases. There seems to be little logic in making a different rule for death cases, and especially where prior to his decease the employee was not disabled by heart disease.
I therefore respectfully dissent.
THOMAS and BARNS (Retired), JJ., concur.