THORNAL, Justice.
By petition for a writ of certiorari we are requested to review an order of the Florida Industrial Commission reversing a Deputy Commissioner’s order by which he awarded permanent total disability benefits to an employee, Theodore Claude Le Forgeais.
Our primary problem is to determine whether the respondent Commission committed error in concluding that there was no competent substantial evidence to support the findings of the Deputy.
Petitioner suffered an industrial injury when in the employ of respondent Erwin-Newman Company on September 16, 1957. While Le Forgeais was engaged as a steel worker, a heavy steel plate fell upon his left great toe causing a compound comminu-ted fracture. The employee was furnished medical and surgical care for about five weeks following the accident. At that point he ran afoul of the law. This resulted in imprisonment in the Miami stockade for 210 days. When released from jail on May 10, 1958, petitioner attempted to return to gainful employment, but apparently continued to have pain in his injured big toe. He received medical treatment and temporary total disability benefits. The treating physicians at that *403 time were unaware that the claimant was suffering from a pre-existing ailment known as Buerger’s disease, an arteriosclerotic condition which had seriously affected the vascular system of his left leg. Eventually, ulcers formed on the fourth and fifth toes of the left foot. They became gangrenous and were amputated. A subsequent microscopic biopsy revealed the presence of the Buerger’s disease which, admittedly, had existed prior to the industrial action. This led to amputation of petitioner’s left leg, just below the knee. This was followed bv an amputation of the knee and lower thigh just above the knee. The employee thereafter filed a claim for benefits, alleging total disability. The initial hearing was held September 28, 1959. There were numerous hearings and extensions of time culminating in a final hearing on November 17, 1959. There was subsequent testimony by a commission-appointed physician on August 25, 1960. The order of the Deputy awarding compensation was entered February 9, 1961, about fifteen months after the “final hearing” and six months after the supplemental testimony. The Deputy concluded that the industrial injury of September 16, 1957, aggravated the pre-existing Buerger’s disease. He also concluded that there was no evidence establishing the extent of aggravation of the disease by the injury. He, therefore, found that the industrial accident was the sole cause of the employee’s disability. He found that the disability was permanent and total and that it resulted in a complete loss of earning capacity. Henderson v. Walker, Fla., 138 So.2d 323. He entered a compensation award accordingly, and allowed a fee for petitioner’s attorney in the amount of $7,500.00. A review by the Full Industrial Commission resulted in a reversal with directions to dismiss the claim. This order is now under review here.
The respondent Commission concluded that the record was totally devoid of any competent substantial evidence, according with logic and reason, to support the findings of the Deputy.
A detailed review of the testimony is unnecessary. The industrial accident is conceded. The pre-existing Buerger’s disease is established beyond question. The point in controversy is whether the commi-nuted fracture of the left big toe so aggravated the pre-existing disease as to produce a subsequent gangrenous condition in the fourth and fifth toes (small toe and next toe) and the ultimate amputation of the entire limb. Several doctors testified that there was a causal relationship between the industrial injury and the severe aggravation of the Buerger’s disease. The employer and carrier successfully contended before the Full Commission that the occlusion in the artery above the knee could not have been triggered by the accident. It is their contention that the loss of the two toes and, ultimately the leg, was solely the result of the Buerger’s disease and had no connection with the industrial accident. They based this position on what they alleged to be anatomical facts which, in their view, precluded any possibility that an injury to the great toe could inspire an ulcer and gangrene in the small toes.
Without complicating this opinion by any attempted analysis of the anatomical factors, we merely refer to the record in which several doctors unequivocally stated that there was actually some causal connection between the injury and the aggravation of the preexisting disease. Admittedly, there is a dispute as to whether the injured condition of the big toe continued until the various operations or whether the large toe completely healed. If it healed it thereby signified that the circulation of blood to this area was unaffected by the disease. Hence, the carrier contended that the injury bore no relationship to the subsequent amputations made necessary by the Buerger’s disease. Cf., Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 326, 327, 81 S.Ct. 6, 5 L.Ed.2d 20. Our examination of the record leads us to conclude that the doctors took all of these elements into consideration and still reached an opinion that the industrial injury did, in a measure, aggravate the dis *404 ease. We do not lose sight of the contention that one or more of the doctors labored under a misapprehension that the big toe first became gangrenous. However, others had the view that even though it did not, there would still be a percentage of causal relationship.
At this point, however, we must disagree with the Deputy. It will be recalled that he found that the disease existed, that “it was aggravated” by the injury, and decided that the record failed to demonstrate the extent of the contribution which the industrial injury made to the ultimate disability. The Deputy then merely indulged a presumption in favor of the employee and held that the industrial accident was the entire cause of the ultimate disability.
The conclusion of the Deputy last stated cannot be sustained. In the first place, it disregards the rule that initially the burden is upon a claimant to establish the cause and extent of his injury by direct evidence or justifiable inferences. Foxworth v. Florida Industrial Commission, Fla., 86 So.2d 147; Arkin Construction Company v. Simpkins, Fla., 99 So.2d 557. Here the record established, at most, that the injury to the big toe was merely an aggravating factor that triggered the preexisting disease. None of the doctors testified that the industrial injury was the sole, or even the primary, cause of the ultimate amputation. All doctors agreed that eventually, within an estimated span varying from a few months to two or three years at most, the same amputation would have been necessary even without the industrial accident. Consequently, the respondent Commission ruled correctly in concluding that there was no competent substantial evidence to support the Deputy’s finding of total disability resulting from the industrial injury alone
However, the record is equally clear that in the view of the medical experts there was a measure of causal connection between the industrial injury and-the ultimate total disability. In directing dismissal of the claim while reversing the Deputy, we think the respondent Commission went too far. The very persuasive arguments of respondents’ counsel to the contrary, we find evidence in the record which can be classed as competent and substantial and which indicates that there was a measure of causal relationship. Two of the doctors on cross-examination by respondent employer’s counsel estimated that the Buerger’s disease itself was 90 to 95% of the cause of the amputations. In converse, they conceded that the great toe injury contributed some 5 to 10% of the causal factors. It is this same evidence which has led us to conclude that the Deputy at the outset, committed error in finding that there was no evidence regarding the extent of aggravation. As a result of this conclusion, we are led to approve the order of the Full Commission reversing the Deputy but we must disapprove its mandate that the claim be dismissed. Instead, the cause should be remanded to the Deputy with directions to enter an order fixing the percentage of the ultimate disability attributable to the industrial accident.
Respondent employer contended that the attorney’s fee allowances were exorbitant. Our holding herein necessitates the remand of the matter for the fixing of an appropriate fee in line with the service rendered. On the matter of the procedure for arriving at an attorney’s fee, we have held that the Deputy Commissioner should have before him some appropriate evidence regarding the reasonableness of the fee. Florida Silica Sand Co. v. Parker, Fla., 118 So.2d 2, 4; Port Everglades Terminal Co. v. Canty, Fla., 120 So.2d 596. In Parker we suggested that such evidence may be presented “either by deposition or by affidavit of qualified and experienced lawyers.” In situations where the amount of a fee is not in dispute by the parties, affidavits are acceptable. In cases where the amount of the fee is disputed, qualified lawyers should be produced in person to testify under oath so that they can be subjected to cross examination.
*405 We have considered the other points made by the respondent employer before the Full Commission regarding the alleged prejudices of the “disinterested doctor” appointed by the Deputy and also the inordinate amount of time that elapsed between the final hearing and the entry of the compensation order. We find nothing in these contentions which would lead us to a conclusion other than the one announced above.
The conclusion of the Full Commission reversing the Deputy is approved but to the extent that said order directs a dismissal of the claim it is quashed with directions to remand the matter to the Deputy Commissioner for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C. J., DREW and O’CON-NELL, JJ., and WALKER, Circuit Judge, concur.