ON REHEARING GRANTED
PER CURIAM.
After oral argument we denied the petition for writ of certiorari, concluding there had been no deviation from the essential requirements of law. However, upon consideration of the petition for rehearing filed by Petitioner (claimant), we find that we failed to apply our recent decision of Evans v. Florida Industrial Commission, 196 So.2d 748, with respect to the matter of an apportionment in this case.
The following appears from the Deputy Commissioner’s order which was approved by the Commission:
“6. On September 11, 1964, the Employee, RICHARD HOLLOWAY, suffered a compensable injury by accident arising out of and during the course of his employment with CURCIE BROTHERS, INC. The accident occurred when a vehicle which Claimant was operating in the course of his employment with CURCIE BROTHERS, INC., as a truck driver, was parked at a railroad crossing. Another truck struck Claimant’s vehicle in the rear thereby accelerating, aggravating and rendering symptomatic a preexisting disease and, more particularly, an arthritic process.
■ “That by reason of the accidental aggravation or acceleration of disability, particularly with respect to the preexisting disease, the Employee is en *501 titled to compensation for temporary total and permanent partial disability, plus medical benefits, one-half of which is found to be the result of the captioned accident. This finding is based on the testimony of both Drs. Fixel and Rahilly.
“Dr. Rahilly testified that Claimant has an overall disability of 24%, one-half of which is due to a pre-existing arthritic condition.
* * * * * ‡
“Under the law that existed prior to July 1, 1965, (440.02 (19), Florida Statutes), where apportionment is applicable by reason of aggravation or acceleration of a disease as a result of a compensable accident, benefits are apportioned for temporary total disability compensation and medical, as well as for permanent disability and death, if applicable. Thus, the Employer’s responsibility for compensation for temporary total disability based on the average weekly wage of $75.02 is one-half of $42.00 or $21.00 per week. The Employer is also entitled to a credit of one-half the medical benefits paid subsequent to September 11, 1964. Claimant was entitled to compensation for 32 weeks of disability at $21.00 per week, under the applicable apportionment, between September 12, 1964 and April 19, 1965, the date on which he achieved maximum medical improvement. * * ”
It appears that the claimant’s osteoarthritis pre-existed his accident; however, there is no evidence that such pre-existing condition was in any way disabling to the claimant in his employment as a truck driver at the time of the accident. Nor was there evidence of the disabling effect of the pre-existing disease through its normal progress at the time permanent disability was determined. Dr. Rahilly, an orthopedic surgeon, in testifying put it this way:
“I would say that this man probably had a pre-existing silent osteoarthritis in his neck, according to the history he gave me, which became symptomatic as a result of this accident. * * * ”
He testified further:
“I think that before his accident, we would — if we did not take into account what he was doing at all, the fact that he was a truck driver — he was probably an effective human, walking around, taking care of his house and earning a living. Now at that time he only had about a 10% anatomical and physiological disability. His occupational has been greatly changed by his accident.”
Finally, in answer to a question as to whether claimant had extensive osteo-arthritic changes, Dr. Rahilly testified
“Yes, sir, and it must have been very extensive because one accident changed him from a full wage-earner to nothing. Something which perhaps a younger person could have tolerated, and not been so bad off with.”
The finding of Dr. Rahilly was agreed to by Dr. Fixel, also an orthopedic surgeon, who testified claimant’s pre-existing osteo-arthritic condition did not disable him from working. He said, “It didn’t bother him, or at least to the point of preventing him from working. He may have had some aches and pains which did not — were not functionally incapacitating.”
In Evans v. Florida Industrial Commission, supra, we said:
“ * * * in cases in which a preexisting disease is aggravated by industrial injury, the resulting disability, determined as of the time of the award, is to be considered as falling into three categories: (1) that which resulted directly and solely from the accident and which would have occurred even in the absence of the pre-existing disease; (2) that which resulted from the acceleration or aggravation of the pre-existing disease by the accident; and (3) that which resulted from the normal progress of the disease and would have existed had the *502 accident never occurred. Disability falling within the first two categories is com-pensable under the terms of the statute. It is the purpose of Sec. 440.02(19) to relieve the employer of disability within the third category by apportioning it out of an award. We so hold.” (at 752)
We reiterated the foregoing in our opinion, saying:
“ * * * apportionment is proper only when and to the extent that the preexisting disease either, (1) was disabling at the time of the accident and continued to be so at the time the award is made or (2) was producing no disability at the time of the accident but through its normal progress is doing so at the time permanent disability is determined and an award is made.” (at 752)
We reiterated the foregoing in our opinion, with this statement:
“The effect of this opinion is simply to hold that apportionment under Sec. 440.02(19) is proper only when and to the extent that a pre-existing disease produces disability independently of the accelerating or aggravating effect of an industrial accident. In the future, in determining whether and to what extent apportionment should be made it will be necessary to determine the degree or extent of disability falling within the three categories stated earlier herein and to apportion out of an award only that portion of the disability attributable in fact to the normal progress of the preexisting disease which would have occurred had the aggravating accident never occurred.” (at 754)
From the foregoing we conclude on the basis of this record no apportionment is indicated. However, as in the Evans case, opportunity for a showing of permanent disability due to the normal progress of the pre-existing disease was not accorded at the time of the Deputy’s hearing in this case. (The Deputy’s order on the hearing before him was entered May 25, 1966 and the Commission affirmed on October 24, 1966. The Evans decision was rendered February 1, 1967 and our opinion on rehearing therein was entered March 22, 1967.) Consequently, Respondent Curcie Brothers, Inc. should be accorded opportunity — as was allowed in the Evans case— to make such showing if it can.
Claimant also contends that the allowance by the Deputy and the Commission of a credit payment made by the employer during the period of temporary total disability against the subsequent award for permanent partial disability is invalid, citing Schel v. City of Miami (Fla.), 193 So.2d 170. We do not rule upon this point but direct that the Deputy and the Commission make any correction or adjustment in disability benefits which necessarily follows determination of the question of apportionment on remand.
The order of the Full Commission is quashed with direction that the cause be remanded to the deputy for further proceedings in accord with our decision herein.
CALDWELL, C. J., DREW, THOR-NAL and ERVIN, JJ., and WHITE, Circuit Judge (Retired), concur.