465 So.2d 655 (1985)
ESCAMBIA COUNTY COUNCIL ON AGING and Auto-Owners Insurance Company, Appellants,
v.
Willie A. GOLDSMITH, Appellee.
No. AY-460.
District Court of Appeal of Florida, First District.
March 26, 1985.
*656 L. Kathleen Horton-Brown of Clark, Partington, Hart, Hart & Johnson, Pensacola, for appellants.
Barry Silber of Levin, Warfield, Middle-brooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellee.
MILLS, Judge.
The employer/carrier (E/C) appeal from a workers' compensation order awarding Goldsmith PTD benefits, contending the deputy erred in holding that PTD benefits are not subject to apportionment and erred in holding that apportionment requires a showing of disability resulting from pre-existing conditions rather than merely permanent impairment. We agree and reverse.
Goldsmith was injured on 16 September 1981. His doctor concluded that he sustained a 20% permanent impairment to his left leg, 1/2 to 3/4 being attributed to the natural progression of pre-existing conditions.
Goldsmith did not respond to the E/C's argument that PTD benefits are subject to apportionment. The E/C concede the record contains no evidence that Goldsmith was suffering from disability either at the time of the accident or at the time of the hearing.
Goldsmith's substantive rights are governed by Chapter 440, Florida Statutes (1981). We must construe Sections 440.02(18) and 440.15(5)(a), Florida Statutes (1981) to determine whether PTD benefits may be apportioned between a compensable injury and pre-existing conditions.
This issue appears to be one of first impression. Since both statutes deal with apportionment, they must be read in pari materia. State ex rel. McClure v. Sullivan, 43 So.2d 438 (Fla. 1949). Construction should avoid conflict between the two, City of Indian Harbour Beach v. City of Melbourne, 265 So.2d 422 (Fla. 4th DCA 1972), and should find operations which preserve both. Woodley Lane, Inc. v. Nolen, 147 So.2d 569 (Fla. 2d DCA 1962).
Section 440.15(5)(a) states that:
The fact that an employee has suffered previous disability, impairment, anomaly, or disease, or received compensation therefor, shall not preclude him from benefits for a subsequent injury nor preclude benefits for death resulting therefrom. Compensation for temporary disability, medical benefits, and wage-loss *657 benefits shall not be subject to apportionment. (e.s.)
As this court stated in University of Florida v. Karch, 393 So.2d 621 (Fla. 1st DCA 1981), the enumeration of several items upon which a statute either operates or forbids operation excludes from operation all things not expressly mentioned by it. Therefore, because the legislature did not include PTD benefits in the emphasized list, apportionment of those benefits is permissible.
Section 440.02(18) reads in pertinent part
Where a pre-existing disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or acceleration or aggravation of the pre-existing condition reasonably attributable to the accident shall be compensable, with respect to death or permanent impairment. (e.s.)
Before 1979, acceleration or aggravation of "disability" was compensable with respect to "permanent disability." 1980 amendments stated that only acceleration or aggravation of the "pre-existing condition" is compensable with respect to "permanent impairment." Before these amendments, the courts construed Section 440.02(18) to require, before apportionment, that a pre-existing condition be causing "disability" either on the date of the accident or, because of natural progression, at the hearing. Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967). The differing language in the amended statute indicates a different meaning was intended. Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977).
The deputy equated 440.02(18)'s "permanent impairment" with "impairment benefits" under Section 440.15(3)(a), holding that it means that the Legislature intended to apportion impairment benefits where Section 440.15(3)(a) permanent impairment is found, that is, permanent impairment due to amputation, loss of 80% or more of vision of either eye or serious head or facial disfigurement. This construction would indicate that apportionment of PTD benefits is not authorized. But Section 440.15(5)(a) by statutory construction indicates they are.
"Permanent impairment" is defined in Section 440.02(21) as "any anatomic or functional abnormality or loss, existing after the date of MMI, which results from the injury." This is the definition intended when "permanent impairment" is used in Section 440.02(18). "Any anatomic or functional loss" would include permanent, total loss of wage earning capacity.
Further, "impairment benefits" under Section 440.15(3)(a) are benefits for limited types of permanent impairment. The legislature knew this difference yet used the broader "permanent impairment" in Section 440.02(18).
Reading Sections 440.02(18) and 440.15(5)(a) in pari materia, PTD benefits can be apportioned, and the deputy erred in holding that they could not.
Before 1979, Section 440.02(18) was construed to require that before a disability award could be apportioned, the pre-existing condition had to be causing disability either at the time of the accident or, because of natural progression, at the time of the hearing. Disability meant a loss of wage earning capacity rather than a permanent impairment as determined by a physician. Permanent impairment without disability was insufficient. Holloway v. Curcie Brothers, Inc., 203 So.2d 499 (Fla. 1967).
The 1980 Legislature provided that only aggravation of the pre-existing condition is compensable with respect to impairment. This shows an intention by the Legislature that the basis for apportioning permanent benefits under the 1981 law is acceleration or aggravation of permanent impairment rather than acceleration or aggravation of disability. Therefore, the portion of the permanent impairment which would have existed without the accident must be apportioned out of the award.
*658 While disability is determined by the deputy on a case by case basis, the determination of permanent impairment is made on the physician's ratings which are based on uniform guidelines and on medically and scientifically demonstrated findings. Here, Goldsmith's physician testified that he had a 20% permanent impairment of the left leg as a result of degenerative diseases, 1/2 to 3/4 of the 20% impairment being the result of natural progression of pre-existing osteoarthritis. This part of the award should be apportioned out.
Goldsmith argues that Evans v. Florida Industrial Commission, supra, controls this case. The Supreme Court said in Evans:
As stated above, apportionment is proper only when and to the extent that the pre-existing disease either, (1) was disabling at the time of the accident and continued to be so at the time the award is made or (2) was producing no disability at the time of the accident but through its normal progress is doing so at the time permanent disability is determined and an award is made.
He further argues that the following cases of this Court have consistently and uniformly applied the criteria set forth in Evans: Sarasota County v. Reichert, 413 So.2d 163 (Fla. 1st DCA 1982); Caruso v. Crown Liquors, Inc., 379 So.2d 1317 (Fla. 1st DCA 1980); Dade County School Board v. Walker, 379 So.2d 1026 (Fla. 1st DCA 1980); Boca Raton Sprinkler v. Andrews, 416 So.2d 846 (Fla. 1st DCA 1982); Barile Excavation & Pipeline Sewer Improvement v. Hough, 417 So.2d 843 (Fla. 1st DCA 1982); Willard Kaufman Company v. Rawlings, 414 So.2d 641 (Fla. 1st DCA 1982); Pridgen v. State, Dept. of Transportation, 390 So.2d 111 (Fla. 1st DCA 1980).
Simply stated, Goldsmith contends there is no proof to support apportionment in this case. However, the cases he relies on to support his contention are based on statutes that pre-existed the 1979 amendments. The cases cited by Goldsmith either pertain to 1977 accidents; or they give not even a hint of the date of the accident to which they pertain; or they give no date of accident but clearly imply that they pertain to pre-1979 statute accidents by the use of such terms as "permanent partial disability" or "judge of industrial claims," which terms are not pertinent to accidents occurring after the 1979 amendments to the Florida Workers' Compensation Law. See Section 440.15(3), Florida Statutes (Supp. 1978); Chapter 79-40, Section 10, Laws of Florida; Chapter 79-312, Section 2, Laws of Florida.
It is clear that the cases argued by Goldsmith were all decided under the pre-1979 Florida Statutes. If any of them had been governed by the 1979 or later statutes, then this Court would have discussed the ramifications of the sweeping changes that the Legislature made in Chapter 440 in 1979 and 1980. This Court would not have continued to apply case law based on prior versions of Chapter 440 without stating the reasons why prior case law should continue to apply under the changed statutes.
This case is reversed and is remanded for the deputy to apportion out of the permanent total disability award that percentage of the award for permanent impairment caused by the natural progression of pre-existing conditions.
JOANOS and BARFIELD, JJ., concur.