NIMMONS, Judge.
The claimant appeals from the deputy commissioner’s order denying payment of medical expenses and temporary total disability benefits following surgery for repair of an incarcerated left inguinal hernia. We reverse.
The employer is an electrical contracting firm for whom the claimant commenced working in February 1984 as a laborer and helper for the apprentice electricians. His primary duty was to carry materials to the electricians as needed. He would lift items such as rolls of wire, concrete blocks, large pipes and transformers.
The claimant did not realize that he had a hernia until he visited an Air Force recruiter on March 2, 1984, for the purpose of enlisting in the Air Force. He was given a physical examination and was informed that he would not be accepted because he had a left inguinal hernia, a condition which had never been symptomatic.
The claimant continued working for the employer. It is not disputed that the claimant experienced no symptoms from the hernia and that his condition did not interfere with his ability to perform his job duties.
On April 10, 1984, the claimant was lifting heavy transformers for his employer when he experienced pain from the hernia by reason, according to Dr. Harrington, of the hernia’s having become incarcerated as a result of the lifting incident on April 10.[1] Claimant was unable to continue working and sought medical attention that day. Surgery, a herniorrhaphy, was successfully performed on April 24, 1984.
The claimant filed a claim for medical expenses and eight weeks of TTD commencing on April 10, 1984.
The deputy expressly found that “the claimant sustained an injury by accident arising out of and in the course of his employment on April 10, 1984, which injury aggravated a pre-existing disease or anomaly as set forth in Section 440.02(18), Flor *1075 ida Statutes, formerly Section 440.02(19), Florida Statutes.”[2]
Although the deputy awarded the cost to the claimant for his initial office visit to Dr. Harrington on April 10 and TTD for the two-week period between April 10, 1984 and the date of surgery, she denied medical benefits associated with the surgery and denied TTD for the post-surgery convalescence period. The deputy relied upon Dr. Harrington’s testimony that even absent the incarceration resulting from the April 10 incident at work, he recommends that “people with a hernia that are able to withstand the anesthetic or the operation have it fixed,” and his opinion that the claimant would eventually have had to have had the inguinal hernia surgically repaired regardless of the April 10 accident. The deputy reasoned that the only effect of the April 10 incident was to “move up the time of doing the hernia.” She therefore awarded the claimant only the two weeks of TTD prior to the surgery and Dr. Harrington’s fee for the initial April 10 visit.
The deputy’s reliance upon Section 440.-02(1), Florida Statutes (1983) — erroneously referred to by the deputy by that section’s prior statutory reference, see footnote 2, supra — is misplaced. That section provides:
(1) “Accident” means only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only, or disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or narcotic drugs, shall be deemed not to be an injury by accident arising out of the employment. Where a pre-existing disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or acceleration or aggravation of the preexisting condition reasonably attributable to the accident shall be compensable, with respect to death or permanent impairment.
That section’s provision for apportionment between the pre-existing condition and the accident-caused condition has no application to claims for temporary compensation or medical care. See Russell House Movers, Inc. v. Nolin, 210 So.2d 859 (Fla.1968) (referring to Section 440.02(19), subsequently renumbered as Section 440.02(18) and then, later, as Section 440.02(1)); Rowe & Mitchell v. Rodgers, 378 So.2d 1281 (Fla. 1st DCA 1980). Such has not always been the case. In Shores Development, Inc. v. Carver, 164 So.2d 803 (Fla.1964), the Supreme Court rejected the claimant’s contention that claims for temporary disability and medical benefits were not subject to the terms of Section 440.02(19). However, as recognized in Nolin, supra, subsequent legislative changes in that section, wrought by Chapter 65-185, Laws of Florida, carved out temporary disability and medical benefits from the statute’s sweep. Id. at 863. After enactment of Chapter 65-185, Section 440.02(19) provided, in relevant part:
(19) * * * Where a pre-existing disease or anomaly is accelerated or aggravated by accident arising out of and in the course of employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable with respect to permanent disability or death. Compensation for temporary disability and medical benefits provided by this chapter shall not be subject to apportionment under this subsection.
The underlined portion was added by Chapter 65-185.
In 1979, the Legislature performed major surgery on the above section, which had been renumbered to subsection 18. The effects of Chapter 79-40, section 2, Laws of Florida, were as follows:
(18) * * * Where a preexisting disease or anomaly is accelerated or aggravated by accident arising out of and in the *1076 course of employment and resulting in death, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable, with respect to permanent disability or death. — Compensation for temporary disability-and-medical benefits provided by this chapter shall -not be subject to apportionment-under this subsection.
The following .year the Legislature restored to the above section most of what it had done via Chapter 79-40. Chapter 80-236, section 2, Laws of Florida, did the following:
(18) * * * Where a preexisting disease or anomaly is accelerated or aggravated by an accident arising out of, and in the course of, employment and resulting ⅛ death,- only acceleration of death or the acceleration or aggravation of the preexisting condition reasonably attributable to the accident shall be compensa-ble, with respect to permanent impairment or death.
That is the way the statute currently reads, as can be seen from our earlier quote in this opinion of Section 440.02(1), Florida Statutes (1983).
We have not overlooked the fact that when the Legislature in 1980 appeared to restore what it had taken away in 1979, it failed to put back in the last sentence:
“Compensation for temporary disability and medical benefits provided by this .chapter shall not be subject to apportionment under the subsection.”
However, it is reasonable to assume that such language was not put back in because it would be redundant given the restoration of the limiting language, “with respect to permanent impairment or death,” thus already rendering the section inapplicable by its terms to temporary compensation or medical benefits. This conclusion is bolstered by the provisions of Section 440.-15(5)(a), Florida Statutes (1983):
(a) The fact that an employee has suffered previous disability, impairment, anomaly, or disease, or Received compensation therefor, shall not preclude him from benefits for a subsequent injury nor preclude benefits for death resulting therefrom. Compensation for temporary disability, medical benefits, and wage-loss benefits shall not be subject to apportionment.[3] (emphasis added)
We also find support for our construction of Section 440.02(1), as excepting from its provisions temporary benefits and medical care, the supreme court’s expression in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla.1967), that the above section’s predecessor was a limitation on the operation of the universally accepted maxim that the employer takes the employee as he finds him. The Court went on:
Since this maxim is a part of the basic philosophy of our workmen's compensation act, it follows that the apportionment provisions should be construed so as to minimize their inconsistency with it.
Id. at 751.
Finally, the deputy’s reliance upon Pa-drick Chevrolet Company v. Crosby, 75 So.2d 762 (Fla.1954), was misplaced. Unlike the present statute, the 1951 version of Section 440.02(19), with which the Padrick court dealt, included within its sweep temporary benefits and medical care.[4] Further, much of the Court’s opinion in Pa-drick dealt with the proper application and construction of the “hernia statute,” Section 440.15(6), Florida Statutes (1951), a statute which was repealed in 1982 by Chapter 82-237, Laws of Florida.[5]
*1077 The appealed order is reversed and the cause is remanded for further proceedings consistent with this opinion.
WENTWORTH and ZEHMER, JJ., concur.

. As explained by Dr. Harrington, the "incarcerated” condition meant that "the intestinal contents or intra-abdominal contents came through the hernia onto the area of the abdominal wall.”

. Although the deputy cited to Section 440.-02(18), the citation should have been to Section 440.02(1), Florida Statutes (1983), which is the same section that had previously appeared as Section 440.02(18) in the 1981 version of Florida Statutes.

. See Russell House Movers, Inc. v. Nolin, supra, for a discussion of the significance of the absence from Section 440.15(5)(a)’s predecessor of the emphasized current language in the above quoted section.

. Similarly, see Simmons v. City of Coral Gables, 186 So.2d 493 (Fla.1966).

.For an explanation by the Supreme Court of its Padrick decision, see Evans v. Florida Industrial Commission, supra; see also Quickie Food Stores v. Huddleston, IRC Order 2-2531(S) (July 16, 1974), and Plant City Steel v. Grace, 381 So.2d 738 (Fla. 1st DCA 1980) (applying the now-repealed "hernia statute").